ANDREW LEO OKSANEN v. STATE.

187 N. W. (2d) 771.

June 11, 1971—No. 42178.

*C. Paul Jones,* State Public Defender, and *Doris O. Huspeni,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *John C. Arko,* County Attorney, and *Thomas J. Bieter,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Rolloff, JJ.

PER CURIAM.

Appeal from an order of the district court denying petitioner's application for postconviction relief. Petitioner contends that when he was arraigned on a charge of unauthorized use of a motor vehicle on May 24, 1955, and waived counsel, he did so as a result of ignorance and incompetence. He also contends that his plea of guilty, upon which sentence was imposed, was "induced by promises."

From the record it appears that, on January 31, 1955, petitioner appeared in Federal district court in Fargo, North Dakota, on a charge of transporting a stolen motor vehicle in interstate commerce. After conferring with his counsel, he waived formal indictment and entered a plea of guilty to the charge. On February 16, 1955, the court imposed a sentence of 3 years and placed him on probation. Oksanen v. United States (8 Cir.) 362 F. (2d) 74. On March 19, 1955, he drove an automobile in Chisholm, Minnesota, without the owner's permission in violation of Minn. St. 1961, § 168.49.[1] He was arrested on April 3 and waived preliminary examination on April 6, 1955. On May 24, he appeared for arraignment in the district court, at which time the following colloquy took place:

"The Court: You are being charged with a criminal offense here. Do you have a lawyer?

"Defendant [petitioner]: No.

"The Court: Do you understand what your constitutional rights are here? You have a right to be represented by counsel; and if you can show the Court that you cannot hire a lawyer, that you do not have the means to hire a lawyer, the Court may appoint a lawyer for you at the expense of the county. Now, what is your position? Do you think you need a lawyer here?

"Defendant: No, I don't.

---

[1] Minn. St. 1961, § 168.49, repealed by L. 1963, c. 753, art. 2, § 17, provided in part: "No person shall drive, operate or use a motor vehicle without the permission of the owner or his agent in charge and control thereof."

"The Court: You feel you understand your rights and can appear here without a lawyer?

"Defendant: Yes sir.

"The Court: All right. The record may show that defendant in open court waives the privilege of being represented by counsel; that the Court has explained to him his constitutional rights and offered to appoint for him at the expense of the county a lawyer to represent him here. Now, will you please listen while the clerk reads the information against you."

Petitioner was given a copy of the information, and it was read to him by the clerk.

"The Court: * * * Now, Mr. Oksanen, did you understand what the charge against you is?

"Defendant: Yes.

"The Court: And you have already said that you did not want to be represented by counsel and that you understand your rights. Now, of course, the next thing the Court will be inquiring about here is what you want to do, whether you want to stand trial or whether you want to plead guilty to this information.

"Defendant: I plead guilty.

"The Court: You want to plead guilty?

"Defendant: Yes, sir.

"The Court: You understand what that means?

"Defendant: Yes, sir.

"The Court: That means then that what you have heard read here is substantially true. Is that right?

"Defendant: Yes, sir.

"The Court: All right. The record may show that the defendant, knowing his rights, enters a plea here of guilty to the information."

Thereafter, petitioner admitted the substantive acts charged in the information to which he had pled guilty.

"Mr. Naughtin [assistant county attorney]: Now, you understand, do you, Oksanen, that this accuses you of taking the car from Chisholm; that was the Rolle car, a Studebaker?

"Defendant: Yes.

"Mr. Naughtin: Where did you drive that car?

"Defendant: I drove it from Chisholm to Tower; and from Tower, I drove it into Virginia, where I left it.

"Mr. Naughtin: And left it in Virginia?

"Defendant: Yes, sir.

"Mr. Naughtin: I didn't want this confused with another. And then you took another car from the City of Virginia and left it at Eveleth?

"Defendant: Yes, sir.

"Mr. Naughtin: Was there another car involved that you drove to the Indian reservation and back?

"Defendant: No, it was this same car.

"Mr. Naughtin: This is the one you drove to the Indian reservation?

"Defendant: Yes."

After the plea of guilty was accepted, petitioner was sentenced to an indeterminate sentence of up to 5 years at the State Reformatory. He was subsequently paroled, after which he engaged in two armed robberies for which he was convicted. He is now in custody at the State Prison at Stillwater.

Petitioner's conviction in Federal court in February 1955 is reviewed in a lengthy opinion, Oksanen v. United States, *supra*. In a recent decision of this court, Oksanen v. State, 289 Minn. 516, 184 N. W. (2d) 1, we considered his claim that the Habitual Offender Act, Minn. St. 1961, § 610.28, was improperly invoked by the imposition of a sentence of 10 to 80 years following a conviction for robbery in 1958 because the Dangerous Offender Act, Minn. St. 609.155 and 609.16, subsequently was invoked by imposition of a 30-year sentence following a conviction for robbery in 1965, to run concurrently with the previous sentence. We found the claim without merit, concluding (289 Minn. 517, 184 N. W. [2d] 2):

"* * * Suffice it to say that defendant's record is not one of isolated criminal acts not shown to be related to criminal behavior dangerous to the public. Since 1955 he has been convicted of four felonies, two of them for robbery while on parole. Under such circumstances we find no impropriety in treating petitioner as a dangerous offender."

On July 28, 1966, petitioner applied to the district court for a writ of error coram nobis and for an evidentiary hearing on the May 24, 1955, conviction. The application was denied, and no appeal was taken.

On March 31, 1969, petitioner instituted postconviction proceedings seeking to have his conviction of May 24, 1955, vacated and set aside on the grounds that his waiver of counsel was not intelligently made and that his plea of guilty was predicated on promises and threats. The line of attack against this conviction is generally the same as that found in Oksanen v. United States, *supra*. On the basis of the showing made in this postconviction proceeding, the district court denied relief, holding that, while there was evidence that petitioner was below average in intelligence, nevertheless he had "on May 24, 1955 and has now the

requisite intelligence and mental capacity to comprehend not only the proceedings involving the charge which resulted in his plea of guilty, but also his right to be represented by counsel." Petitioner had "displayed an understanding and reasoning ability which contradict his claim." The court also expressed the view that "the remainder of petitioner's claims and contentions are no more than bald assertions and allegations unsupported by the evidence."

We conclude that the record supports the trial court's holding that, even though petitioner may not have an exceptional I. Q. nor an extensive education, he nevertheless had the requisite intelligence and mental capacity to comprehend the charges against him and to intelligently waive his right to counsel. He had been convicted of a series of offenses of the same type prior to his plea of guilty, and as the United States Court of Appeals stated in Oksanen v. United States (8 Cir.) 362 F. (2d) 74, 79, in considering the same objection:

"* * * [I]t is very doubtful that appellant was confused by courtroom procedure or was unaware of the consequences of a guilty plea."

If for no other reason than prior experience, petitioner was indeed competent to knowingly and intelligently waive his right to counsel. He has not sustained his burden of proof in the attack upon the conviction of May 24, 1955.

His contention that his plea of guilty to the conviction was induced by promises that he would be treated for alcoholism and that his Federal probation would not be revoked is also without merit. The postconviction court noted that the record simply does not support petitioner's claims. In postconviction proceedings the petitioner has the burden of establishing by a fair preponderance of the evidence that he was denied a protection guaranteed by the Bill of Rights or that he has been deprived of fair treatment amounting to a violation of the fundamental rights of due process. Clausen v. State, 288 Minn. 558, 181 N. W. (2d) 471; Cable v. State, 284 Minn. 89, 169 N. W. (2d) 391. The record shows that petitioner has not met this burden. It presents also the picture of an experienced violator of the law who does not claim that he was innocent of the charges against him or that he was deprived of the right to present a meritorious defense.

Affirmed.